# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

KEITH McDAY,

          Plaintiff,

  vs.            9:14-CV-997
               (GLS/ATB)

CORRECTION OFFICER D. BUSHEY, et al.,

          Defendants.

---

KEITH McDAY, Plaintiff pro se
DENISE P. BUCKLEY, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

Currently before this court is a motion for partial summary judgment[1] by defendants LaValley and Mendofik, seeking dismissal of plaintiff's claims for failure to protect and inadequate medical care as set forth in his civil rights complaint. (Dkt. No. 49). Plaintiff filed a response in opposition to the motion, and defendants filed a reply. (Dkt. Nos. 59, 60). The motion has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L. Sharpe, United States District Judge. For the reasons stated below, this court will recommend granting defendants' motion for partial summary judgment, and dismissing all claims against defendants LaValley and Mendofik.

---

[1] Defendants D. Bushey and M. Liberty were named only in plaintiff's excessive force claim, and have not moved for summary judgment.

## I.    Facts

### A.    Plaintiff's Complaint

In his complaint, plaintiff alleges that on April 2, 2013, defendants Bushey and Liberty used excessive force while escorting plaintiff, who was then incarcerated at Clinton Correctional Facility ("Clinton"), from the mess hall after a Clinton employee accused him of stealing food. (Compl. ¶ 9-11). During the escort, plaintiff alleges that defendants ordered him to stop and place his hands up against a wall. (Compl. ¶ 12). Plaintiff states that "[s]uddenly and without provocation," defendant Bushey punched plaintiff in the face with a closed fist, and defendant Liberty tripped plaintiff, causing him to fall to the floor. (Compl. ¶¶ 14-15). According to plaintiff, defendants Bushey and Liberty then handcuffed him, and while plaintiff was face down on the floor, defendants Bushey and Liberty "stood up and started stomping and kicking [him] repeatedly all over [his] body." (Compl. at ¶ 16).

Plaintiff states that after this incident, he "was rushed to the Clinton prison infirmary," where he was examined by defendant Mendofik, who was employed as a nurse at Clinton. (Compl. ¶ 21). Plaintiff alleges that defendant Mendofik "filled out several reports indicating the injuries she allegedly observed on my body" but "did not tend to any of my injuries." (Compl. ¶ 21-22). After being seen by defendant Mendofik, plaintiff was escorted to the Special Housing Unit ("SHU"). During his SHU confinement, plaintiff "continually asked correction officers and medical staff . . . for emergency medical attention because of the injuries and pain I was suffering." (Compl. ¶ 31). Plaintiff also "submitted multiple sick call slips requesting to see a

doctor," but received no response. (Compl. ¶ 33).

On April 7, 2013, plaintiff submitted an inmate grievance complaint regarding the alleged excessive use of force and denial of medical care. (Compl. ¶ 35). Plaintiff alleges that his grievance informed defendant LaValley, the superintendent of Clinton, that plaintiff "suffered serious injuries and faced a substantial risk of harm and yet [LaValley] ignored that risk by failing to take reasonable steps to abate the harm." (Compl. ¶ 42). After an investigation by Clinton staff, defendant LaValley denied plaintiff's grievance on April 24, 2013. (Dkt. No. 49-8 at 39). Plaintiff appealed to the Central Office Review Committee ("CORC"), and the CORC upheld defendant LaValley's determination on August 28, 2013. (Dkt. No. 49-8 at 34).

## B. Defendants' Exhibits

In support of their summary judgment motion, defendants have submitted: declarations from Clinton staff, including defendant LaValley; plaintiff's medical records, including photographs taken at the time of plaintiff's April 2, 2013 medical examination by defendant Mendofik; and the transcript from plaintiff's April 15, 2013 disciplinary hearing related to the April 2, 2013 mess hall dispute. (Dkt. Nos. 49-8, 49-9, 49-12, 50, 50-1). Rather than detail all the evidence at the outset, the court will discuss the relevant information below as necessary for the court's analysis of the summary judgment motion. (Dkt. No. 49-8 at 39).

Defendants have also filed the transcript of plaintiff's November 12, 2015 deposition. (Pl.'s Dep., Dkt. No. 49-6). Plaintiff argues that this transcript is inadmissible evidence because defendants did not provide adequate notice of the date

and time of his deposition as required by F.R.C.P. 30(b)(1). Plaintiff also argues that defendants violated this court's scheduling order (Dkt. No. 17 at 4), by not providing fifteen days advance notice prior to the deposition. (Pl.'s Decl. at ¶ 7, Dkt. No. 59). Upon review of the record, this court concludes that plaintiff's argument lacks merit.

On September 9, 2015, defendants notified plaintiff that his deposition was scheduled for September 24, 2015. (Dkt. No. 60-2). Plaintiff objected because defendants had not filed a notice of compliance with the court, and defendants agreed to reschedule the deposition after doing so. (Dkt. Nos. 25-27). Defendants subsequently provided notice that plaintiff's deposition would be held on October 23, 2015, but plaintiff objected because he had not received all documents responsive to his discovery requests. (Dkt.Nos. 29, 60-3). With my permission, defendants sent plaintiff the requested documents by overnight mail and rescheduled plaintiff's deposition to be held "within the month." (Dkt. No. 29-30). Defendants described the delay as intended to "ensure that [plaintiff] has received the enclosures and he has had an opportunity to review same prior to his deposition." (Dkt. No. 29). Plaintiff did not object to defendants' request at that time.

Plaintiff's deposition was held on November 12, 2015, more than fifteen days after defendants sent the requested discovery materials. Plaintiff attended the deposition and only objected once during his testimony, when he felt intimidated by one of the correctional officers in the room. (Dep. at 46-53). Plaintiff never mentioned the imprecise deposition notice until his response to defendants' motion for summary judgment. Accordingly, plaintiff waived any irregularity in the notice by failing to

object in a timely fashion, and his deposition testimony is admissible. *See Cerami v. Robinson*, 85 F.R.D. 371, 372 (S.D.N.Y. 1980); *see also* F.R.C.P. 32(d)(1) ("An objection to an error or irregularity in a deposition notice is waived unless promptly served in writing on the party giving notice.").

Plaintiff also objects to the admissibility of the Declaration of Charles Simpson, a nurse administrator at Clinton who offered his interpretation of plaintiff's medical records and the adequacy of plaintiff's medical treatment in support of defendants' motion for summary judgment. (Dkt. No. 49-10). Plaintiff argues that defendants failed to timely disclose this non-party as an expert witness, and that Mr. Simpson's testimony is hearsay. (Dkt. No. 59, at ¶ 9-25). Plaintiff also contends that Mr. Simpson's declaration misstates plaintiff's medical records. (*Id.*, at ¶ 22). Defendants submitted a supplemental declaration of Mr. Simpson to correct some of these misstatements. (Dkt. No. 60-5). In light of plaintiff's objections, and the reliable documentary evidence available from plaintiff's certified medical records (Dkt. No. 50-1), this court did not consider Mr. Simpson's declaration (Dkt. No. 49-10) or his supplemental declaration (Dkt. No. 60-5) when making this report and recommendation.

## II.  <u>Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## III.   <u>Failure to Protect</u>

Plaintiff alleges that defendant LaValley, the superintendent at Clinton at the time of the alleged excessive force incident, was aware of "the known pattern of physical abuse and use of excessive force by defendants D. Bushey and M. Liberty on inmates at Clinton, including plaintiff" and acted with deliberate indifference to a substantial risk of serious harm by failing to "take disciplinary or other action" against the correctional officers. This conclusory allegation is insufficient to support plaintiff's

Eighth Amendment failure to protect claim against defendant LaValley.

## A.    Legal Standards

In order to state an Eighth Amendment claim for failure to protect an inmate, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, **and** prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The plaintiff must show that prison officials **actually knew of and disregarded** an excessive risk of harm to the inmate's health and safety. *Id.* at 837. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and the defendant must also draw that inference. *Id.*

## B.    Application

In this case, defendant LaValley clearly did not directly participate in the alleged excessive force incident. Plaintiff also recognizes that defendant LaValley, as superintendent, cannot be held responsible for the alleged assault merely because of his supervisory role at the time of the incident. (Pl.'s Br. at 17-18). Instead, plaintiff contends that defendant LaValley was aware of a pattern of mistreatment of inmates by defendants Bushey and Liberty, and that the superintendent's failure to intervene or discipline the correctional officers put plaintiff at risk. (Compl. ¶ 47). This theory is entirely premised upon plaintiff's recollection that defendants Bushey and Liberty had assaulted an inmate in a neighboring cell approximately two weeks prior to his incident, and that a month earlier, the same correctional officers had beaten up a "guy with mental problems." (Dep. 49-6, at 80). Plaintiff offers no evidence that a pattern or

history of inmate mistreatment existed, or that defendant LaValley was aware of it. Such conclusory allegations are insufficient to support a finding that a reasonable fact-finder could conclude that defendant Lavalley had actually learned of a real threat to plaintiff and failed to intervene prior to the April 2, 2013 use of force. *Povoski v. Artus*, No. 9:11-CV-120 (DNH/DEP), 2014 WL 1292219, at \*22 (N.D.N.Y. Mar. 28, 2014) (granting summary judgment to defendants on vague claim that supervisors were made aware of potential harm "numerous times through numerous channels"); *Kearney v. Goord*, No. 09-CV-679(Sr), 2011 WL 1260076, at \*5-6 (W.D.N.Y. Mar. 4, 2011) (general allegations of "complaints of illegal behavior on the part of facility staff" were insufficient to show that supervisors failed to protect inmate).

There is no evidence to support plaintiff's claim that defendant LaValley was aware of the purported risk presented by defendants Bushey and Liberty prior to the incident on April 2, 2013. Plaintiff admits that he never spoke with defendant LaValley while housed at Clinton, and that the only time he communicated with the superintendent was in his grievance, filed after the use of force. (Dep. at 143). Plaintiff did not allege that either correctional officer had mistreated him prior to April 2, 2013, or that he had ever complained about their behavior towards him. (Dep. at 82-83).

Plaintiff's argument that other inmates had made legitimate complaints of mistreatment by defendant Bushey and Liberty is also unsupported, because there are no records of any inmate grievances of excessive force being upheld against either correctional officer. Defendants filed the Declaration of John Shipley, the Director of the Bureau of Labor Relations ("BLR") for DOCCS, whose responsibilities include

administration of the employee disciplinary program and the evaluation of misconduct reports filed against correctional officers. (Dkt. No. 49-11, at ¶¶ 2-8). Mr. Shipley stated that his office searched its files and found no "founded employee disciplinary grievances"[2] related to the use of force by defendants Bushey and Liberty between April 2, 2008 and April 2, 2013. (Dkt. No. 49-11, at ¶ 9-12).

Plaintiff argues that he would be better able to respond to defendants' partial motion for summary judgment if he had been provided *all* inmate grievances filed against defendants Bushey and Liberty, not merely "founded employee disciplinary grievances."[3] (Dkt No. 59, ¶ 29-35). This court finds that plaintiff would still be unable to support his failure to protect claims against defendant LaValley, even if plaintiff were able to show that other inmates had filed grievances against the correctional officers. A supervisory official cannot be liable for a constitutional

---

[2] Mr. Shipley defined "founded employee disciplinary grievances" as "(1) any grievance that disputed a Notice of Discipline that was sustained at the initial administrative level and did not lead to further proceedings (i.e., settlement or arbitration); and (2) any grievance that disputed a Notice of Discipline that was sustained following settlement or arbitration. (Dkt. No. 49-11, at ¶ 10).

[3] This court has already decided this issue. On December 9, 2015, plaintiff filed a motion to compel defendant's production of "all grievances, complaints, or other documents . . . concerning mistreatment of inmates by defendants Bushey and Liberty." (Dkt. No. 31-1, at ¶ 7). After a hearing, this court narrowed the scope of plaintiff's discovery request after defendants provided proof that a search of BLR files would be less burdensome than a search of all inmate grievance records and that BLR files would contain "records pertaining to all sustained charges of excessive force against security personnel referred to it by DOCCS' Office of Special Investigations ("OSI"), including allegations of excessive force made by inmates and people who are not inmates." (Dkt. Nos. 40, 41-1). My February 1, 2016 order resolving the discovery dispute was made "without prejudice to the future assertion by counsel, if any of plaintiff's claims survive substantive motions and counsel is appointed to assist plaintiff in connection with a trial, of properly-framed discovery requests relating to other prior complaints of the alleged use of improper or excessive force against inmates by defendants Bushey and Liberty. . ." (Dkt. No. 40 at 2).

violation merely because he received a grievance or complaint from an inmate and referred the grievance to another individual for investigation. *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (a supervisor's referral of a prisoner's letter of complaint to a subordinate for review, and a later response to the prisoner to advise him of the subordinate's decision did not demonstrate the requisite personal involvement on the part of the supervisory prison official); *see also Smart v. Goord*, 441 F. Supp. 2d 631, 642-643 (S.D.N.Y. 2006) (the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement); *Greenwaldt v. Coughlin*, No. 93 Civ. 6551(LAP), 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."). Thus, even if there were evidence that other inmates had submitted complaints to the superintendent about defendants Bushey and Liberty, plaintiff would still not meet his burden to show that defendant LaValley had actual knowledge of and disregarded a risk to plaintiff's health and safety. Accordingly, this court recommends granting defendant LaValley's motion for summary judgment with respect to plaintiff's failure to protect claim.

## IV.   **Medical Care - Deliberate Indifference**

### A.   **Legal Standards**

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

### 1.    Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin*, 467 F.3d at 279) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844-47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the

inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

## 2. Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835–37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she

knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. The court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin* 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id.; see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983.

**B.    Application**

Plaintiff makes two separate claims of medical indifference.  First, he alleges that defendant Mendofik did not adequately evaluate and treat his injuries immediately after the April 2, 2013 use of force incident and did not refer him to a physician. (Compl. at ¶ 30).  Second, he alleges that defendant LaValley exercised deliberate indifference to plaintiff's serious medical needs while plaintiff was housed in SHU. (Compl. at ¶ 42). This court recommends that defendants be granted summary judgment on all of plaintiff's medical indifference claims.

**1.    Defendant Mendofik**

**a.    Objective Element**

The record shows that plaintiff saw defendant Mendofik for medical treatment only one time while at Clinton, immediately after the alleged excessive use of force on April 2, 2013.  (Dkt No. 50-1, at 77-79).  Plaintiff also testified during his deposition that he only saw defendant Mendofik once.  (Dep. at 142).  After examining plaintiff, defendant Mendofik prepared an "Offender Injury Report" and a "Use of Force Report."  (Dkt. No. 50-1, at 77-79).  She listed plaintiff's injuries as (1) a bruise at the top of his head, (2) an abrasion to the right lateral head, (3) scratches to his right upper back, (4) a scratch to his left lower back, (5) a swollen lip, (6) a "skin nick" on his left knee, (7) a swollen left pinky finger, (8) a skin tear between the third and fourth finger on his left hand, and (9) an approximately ten inch scratch to his right forearm.  (Dkt. No. 50-1, at 77).

Nurse Mendofik's description of plaintiff's injuries are consistent with the

photographs taken just before her examination. (Dkt. No. 50). During his deposition, plaintiff recalled that the photographs were taken "as soon as I came" to the infirmary. (Dep. at 98). Plaintiff agreed that the photographs showed cuts and swelling, but testified that he believed that the photographs did not capture other undiagnosed injuries, such as internal bleeding. (Dep. at 109-110). He has also repeatedly argued that defendants Bushey and Liberty were "experts," who made sure that they did not leave any external marks on plaintiff's body, despite inflicting serious injuries. (Dep. at 81-82, 105). The court is required to resolve all ambiguities and draw all factual inferences of favoring of the non-movant, but "even a pro se litigant cannot defeat a motion for summary judgment through mere allegations or conclusory statements unsupported by facts." *See Simpson v. Oakes*, 640 Fed. App'x 86, 88 (2d Cir. March 1, 2016) (citing *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002)). Therefore, this court concludes that there is no genuine issue of material fact with regards to plaintiff's injuries when he was examined by defendant Mendofik. These types of minor, temporary injuries have been held not to constitute serious medical needs as a matter of law.

For example, in *Bradley v. Rell*, 703 F. Supp. 2d 109 (N.D.N.Y. 2010), the court held that plaintiff's allegations that he suffered a headache and blurry vision, swelling and bruising around his head, and an abrasion to his right lower leg, extreme headaches, and psychological problems, were insufficient for a rational fact finder to conclude that his injuries were sufficiently serious to constitute a serious medical need. *Id.* at 121-22 (collecting cases); *see also Lewis v. Havernack*, No. 12-CV-31 (GLS/DEP), 2013 WL

15

1294606, at *9 (N.D.N.Y. Jan 23, 2013) (Rep't- Rec.) (holding that injuries to plaintiff's upper cheeks and lower eyelid resulting from being punched are "minor injuries, which are not sufficiently serious to state a deliberate indifference claim under the Eighth Amendment) (collecting cases), *adopted*, 2013 WL 1294592 (N.D.N.Y. Mar. 28, 2013); *Sledge v. Fein*, 11 Civ. 7450, 2012 WL 4761582, at *5 (S.D.N.Y. Aug. 2, 2012) (noting that courts have "held that terrible and extreme headaches and swelling do not satisfy the objective component of an Eighth Amendment claim"); *Latouche v. Tompkins*, No. 09-CV-308 (NAM/RFT), 2011 WL 1103022, at *14 (N.D.N.Y. Mar. 4, 2011) (Rep't-Rec.) (finding that a 4-5 centimeter bruise, a 2-3 centimeter cut, and a scratch on plaintiff's face and pain from a bump on the right and left sides of his face are not objectively sufficiently serious to support a claim of medical indifference), *adopted*, 2011 WL 1103045 (N.D.N.Y. Mar. 23, 2011); *Dallio v. Hebert*, 678 F. Supp. 2d 35, 44-45 (N.D.N.Y. 2009) (holding that two black eyes, bruising in kidney area, kick marks and open lacerations on knees, bruising and red spots on thigh, lacerations on arms and wrists, a headache, and numbness in hands and fingers are not "conditions of urgency that may produce death, degeneration, or extreme pain") (collecting cases); *Jones v. Furman*, No. 02-CV-939F, 2007 WL 894218, at *10 (W.D.N.Y. Mar. 21, 2007) (explaining that soreness, pain in and a lump behind ear, lump on back of head, abrasions on nose and knuckle, and bruising to back, ribs and legs do not constitute a serious medical condition); *Hickey v. City of New York*, 01-CV-6506, 2004 WL 2724079, at *16 (S.D.N.Y. Nov. 29, 2004) (holding that cuts and bruises do not constitute sufficiently serious medical needs); *Rodriguez v. Mercado*, 00-CV-8588,

2002 WL1997885, at *8 (S.D.N.Y. Aug. 28, 2002) (finding that bruises to plaintiff's head, back and wrists, accompanied by back pain and migraines but no loss of consciousness did not constitute a medical condition that was sufficiently serious for purposes of the Eighth Amendment).

The court finds that plaintiff cannot demonstrate that he suffered from "a medical condition that significantly affect[ed his] daily activities;" or that he suffered from "chronic and substantial pain" at the time of the infirmary visit. *Chance*, 143 F.3d at 702 (citation omitted). Plaintiff's injuries were simply not conditions "of urgency, [] that may produce death, degeneration or extreme pain," and were not serious medical needs. *Hathaway*, 99 F.3d at 553.

### b.    Subjective Element

Because plaintiff could not satisfy the objective element of the deliberate indifference standard, the court need not address whether defendant knew that plaintiff faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." However, given the lack of a serious injury, and the treatment that plaintiff did receive, it is unlikely that defendant Mendofik could possibly have acted with subjective recklessness.

Plaintiff alleges that defendant Mendofik did not ask him any questions about his physical health, but also admits that he did not tell her that he was in pain, or offer any other information about his physical condition. (Dep. at 95-97). Plaintiff contends that defendant Mendofik should have taken a number of steps to assess and treat his

17

injuries, including checking his vital signs, providing him medication,[4] and scheduling him to see a physician. (Compl. at ¶ 23-28). Any disagreement that plaintiff has with defendant Mendofik's medical decisions cannot be the basis for an Eighth Amendment claim. *See Simpson*, 640 Fed. App'x at 88 (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1988); *Hernandez v. Keane*, 341 F.3d 137, 149 (2d Cir. 2003)). Likewise, plaintiff's contention that defendant Mendofik failed to follow DOCCS treatment rules and policy does not state a constitutional claim. *See Dixon v. Goord*, 224 F. Supp. 2d 739, 744-45 (S.D.N.Y. 2002) (violations of state law or regulations in themselves do not state a viable section 1983 claim); *see also Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990). Therefore, this court recommends granting defendant Mendofik's motion for summary judgment with respect to plaintiff's medical care claim.

### 2.  Defendant LaValley

#### a.  Objective Element

After his initial examination by defendant Mendofik, plaintiff was housed in SHU at Clinton. While there, he alleges that he felt pain in his head and hands, but "nothing was as excruciating" as the "sharp pain, excruciating pain" in his lower back. (Dep. 116-118). According to plaintiff's testimony, this back pain was so severe after he was first brought to SHU that he "[c]ouldn't move for a few days." (Dep. at 117-118). Plaintiff testified that it was "about three days" before he was able to get out of bed and get a cup of water, and about two weeks before he was fully able to walk

---

[4] Plaintiff testified that after the incident he received some pain medication, "ibuprofen or Tylenol," from Clinton medical staff, but it is unclear if defendant Mendofik was involved. (Dep. at 112-114).

again. (Dep. at 117). Plaintiff was housed in Clinton SHU for approximately one month after the incident, and claims that he was never permitted to see a doctor during that time. (Dep. at 110).

It is unclear how much plaintiff's back pain actually limited his mobility, since he was able to write and submit a sick call request form on April 3, 2013, his first day of SHU confinement. (Dkt. No. 59-1 at 25-26). However, in the absence of contradictory medical evidence, and construing the facts in the light most favorable to the plaintiff, this court will conclude that the allegations raise a genuine issue of material fact as whether plaintiff's back pain, which rendered him immobile for several days while housed in SHU, was a sufficiently serious medical need. *See Guarneri v. Bates*, No. 9:05-CV-444 (GLS/DRH), 2008 WL 686809, at *5-6 (N.D.N.Y. Mar. 10, 2008) (allegations that plaintiff's shoulder injury rendered him immobile raised an issue of material fact); *Harris v. Westchester County Dep't of Corr.*, No. 06-Civ-2011 (RJS), 2008 WL 953616, at * (S.D.N.Y. Apr. 3, 2008) (allegation that injury to lower back rendered plaintiff immobile for a period of time raised an issue of material fact) .

### b.    Subjective Element

Even accepting the fact that plaintiff's immobilizing back pain was sufficiently serious, the evidence still shows that defendant LaValley did not act with deliberate indifference to plaintiff's serious medical needs. Plaintiff testified that he had never spoken with defendant LaValley about his medical condition or need for treatment while in SHU. (Dep. at 143). Likewise, defendant LaValley had no recollection of any personal contact with plaintiff during his incarceration at Clinton. (Dkt No. 49-12,

LaValley Decl., at ¶ 13).

Plaintiff did submit an inmate grievance on April 7, 2013 that alleged excessive use of force by defendants Bushey and Liberty, as well as the failure of multiple correctional officers and medical staff to respond to his sick call requests for medical attention while he was housed in SHU.[5] (Compl. at ¶ 35; Dkt. No. 49-8 at 38). The grievance alleges that plaintiff had suffered "serious injuries" as a result of the use of force, but does not mention the immobility or excruciating pain described in the complaint or provide any further detail. (Dkt. No. 49-8, at 38). In response to the grievance, defendant LaValley had a designated security supervisor investigate the matter. Plaintiff testified that he was interviewed by this designee, but refused to provide any additional information to him. (Dep. at 144).

Defendant LaValley's April 23, 2013 grievance determination noted plaintiff's refusal to answer questions, and the denial of plaintiff's allegations by Clinton staff. (Dkt. No. 49-8, at 39). Finding no malfeasance on the part of staff and no evidence to support plaintiff's allegations, defendant LaValley denied the grievance. (*Id*.). Plaintiff appealed that determination to CORC, but the only injury or medical condition mentioned in the appeal was "bleeding from head wounds." (Dkt. No. 49-8, at 39).

Plaintiff has not provided any support for his assertion that defendant LaValley knew and disregarded a significant risk to plaintiff's health or safety. Plaintiff's grievance, his only attempt at advising defendant LaValley of his medical condition,

---

[5] Plaintiff has not identified any individuals who failed to respond to his requests, and has not named them as parties to this lawsuit.

does not provide any details about his actual medical condition. Plaintiff admits that he refused to provide any information during the investigation of that grievance. Even after defendant LaValley had made his determination regarding plaintiff's grievance and plaintiff submitted an administrative appeal, the only injury that plaintiff identified as "serious" was bleeding from the cuts and scratches on his head. No rational fact-finder could conclude that defendant LaValley acted with "deliberate indifference" to plaintiff's medical needs when he had no knowledge of them, and plaintiff made no attempt to communicate those needs to him. Therefore, this court recommends granting defendant LaValley's motion for summary judgment with respect to plaintiff's medical care claim.[6]

## V.    Medical Care - State Law Claims

In addition to his Eighth Amendment claims for medical indifference, plaintiff also alleges tort claims of medical negligence and ministerial neglect under New York State law against defendant Mendofik. (Compl. at ¶ 50). This claim is barred by state law. New York Corrections Law § 24(2) requires that state law claims for damages against any officer or employee of DOCCS for acts performed within the scope of their employment must be brought as claims against the State of New York in the New York State Court of Claims. This provision, by its plain terms, precludes the assertion of the

---

[6] Defendants LaValley and Mendofik have also included an argument, addressing their claim of qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because I have found no constitutional violation, I need not address qualified immunity.

state law tort claims of medical negligence and ministerial neglect against defendant Mendofik in any other court, including the federal court. *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (finding that Corrections Law Section 24 bars state law claims raised in federal court); *Brown v. Dep't of Corr. Svcs.*, No. 09-CV-949S, 2011 WL 2182775, at *9 (W.D.N.Y. June 2, 2011) (applying *Baker* to state law medical negligence claim against DOCCS employees). Therefore, this court recommends granting defendant Mendofik's motion for summary judgment with respect to all of plaintiff's state law claims.

     **WHEREFORE**, based on the findings above, it is

     **RECOMMENDED**, that defendants' motion for partial summary judgment (Dkt. No. 49) be **GRANTED** and that all of plaintiff's claims against defendants LaValley and Mendofik be **DISMISSED**.

     Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:     August 10, 2016

                                         **Hon. Andrew T. Baxter**
                                       **U.S. Magistrate Judge**